UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TAYLOR J. CAIOLA, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 3:12-CV-00624 (VLB) |
| | : | |
| JOHN R. SADDLEMIRE, | : | |
| ALISA GELLER, and JIM HINTZ, | : | |
|     Defendants. | : | MARCH 27, 2013 |

### ORDER DENYING PLAINTIFF'S MOTION
### FOR PRELIMINARY INJUNCTION [DKT. 2]

The Plaintiff brings this action for injunctive relief challenging his expulsion from the University of Connecticut for violations of the Student Code after a disciplinary hearing. He claims that his due process rights under the Fourteenth Amendment to the Constitution were violated in that:

a. The evidence presented at the hearing did not constitute substantial evidence to sustain the hearing officer's findings. No evidence was presented that independently corroborated the Complainant's version of events, with respect to Plaintiffs alleged application of unreasonable pressure as coercion such that consent was vitiated, while evidence was presented that contradicted Complainant's version of events.
b. The violations of the Student Code cited by the hearing officers in their decision, as applied, are unconstitutionally vague, in that they failed to provide reasonable notice to Plaintiff that his conduct, even as alleged by Complainant, placed him in violation of the Student Code.
c. The violations of the Student Code cited by the hearing officers in their decision, as applied, are unconstitutionally vague, in that Plaintiff's conduct, as alleged by the Complainant, did not fall with sufficient clarity within the ambit of the Student Code provisions.
d. In light of the absence of substantial evidence that Plaintiff had violated the relevant provisions of the

> **Student Code, and in light of the impermissible vagueness of those provisions, as applied to Plaintiffs alleged conduct, the hearing officers' decision to expel Plaintiff was arbitrary and capricious.**

[Dkt. 1 Ver. Compl. at ¶26].

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (internal quotation marks and citation omitted). "A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 152–53 (2d Cir. 2007). If a party seeks a mandatory injunction that alters the status quo by commanding the defendant to perform a positive act, he must meet a higher standard: "in addition to demonstrating irreparable harm, '[t]he moving party must make a clear or substantial showing of a likelihood of success' on the merits, ... a standard especially appropriate when a preliminary injunction is sought against government." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citations omitted). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

"To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).  While an expulsion is a severe penalty, particularly since Caiola was on the verge of graduation and had been admitted into a masters in education program, he is not entitled to the relief sought because he has failed to establish irreparable harm.  In order to demonstrate that he will suffer irreparable injury, plaintiff must show that a monetary award will not adequately compensate him for his injuries.  *See Moore*, *supra*; *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue").  Caiola argues that the stigma of his expulsion will interfere with his academic and teaching career.  Such interference is speculative.  While he states that he was admitted into a masters program contingent on his graduation from UConn, he has failed to offer any evidence that his expulsion did in fact or even was likely to result in a rescission of his admission.  *See Gelco v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987); *Ben-Yonatan v. Concordia College Corporation* 863 F. Supp. 983 (D. Minn. 1994); *but see Maczaczyj v. State of New York*, 956 F. Supp. 403 (W.D.N.Y. 1997) (holding that, where graduate school did not adequately accommodate student unable to attend a required residency program due to panic attacks and student subsequently brought suit

3

under ADA, irreparable injury was shown where student's therapist opined graduate school's refusal had already had a significant negative impact on his mental health and his progress in overcoming his illness and further that denial of relief was likely to result in further psychic harm).

Assuming Plaintiff could show irreparable harm, an injunction is unwarranted because he has also failed to show a clear likelihood of success on the merits.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).  The Supreme Court "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest."  *Id*.  A court must consider three factors in determining whether due process has been satisfied: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id*. at 335.  In the context of student disciplinary hearings, the Supreme Court has held that public high school students facing a ten day suspension must be given some form of notice and afforded some type of hearing, and further posited that "suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures."  *Goss v. Lopez*, 419 U.S. 565m 579, 584 (1975).

4

**UConn provided Plaintiff with adequate procedural process before his expulsion.** Caiola received notice by formal letter on January 30, 2012 that he was the subject of a complaint of sexual assault made to the University. He was advised that he would be further informed as to the "specific alleged violations" of the Student Code and was advised to review the Student Code, available online, and to contact a representative of the University with further questions. Nearly a month later, Caiola received a second formal letter on February 22, 2012 notifying him that an administrative hearing had been scheduled for February 29, 2012 in order to determine if he had violated two sections of the Student Code identified as: (1) Sexual Misconduct and (2) Endangering Behavior. The letter (1) advised Caiola that he was entitled to have a support person present during the hearing, (2) named the witnesses requested to testify at the hearing, (3) advised Caiola of his right to have witnesses attend the hearing, (4) advised Caiola to familiarize himself with the Student Code, (5) provided contact phones number in the event that Caiola had questions, (6) included a copy of the incident report and witness statements received regarding the complaint, and (7) advised Caiola that he had the right to provide a written statement. Various emails from Cinnamon Adams, Assistant Director of Community Standards at UConn, indicate that Caiola provided the names of potential witnesses to Ms. Adams and was provided witness statements by Ms. Adams after her contact with the witnesses.

An administrative hearing occurred as scheduled on February 29, 2012 before two hearing officers and pursuant to the procedures enumerated in the Student Code. The incident report and all available witness and party statements

were provided to the hearing officers. The hearing transcript indicates that Mr. Caiola had a support person present for the hearing, had the opportunity to present his version of the events that occurred on the night in question and to respond to specific questions posed by the hearing officers, as well as the opportunity to question witnesses and the Complainant. The record reflects that three witnesses testified in support of Caiola and one testified in support of the Complainant. Both Caiola and the Complainant gave closing statements. At the conclusion of the closing remarks the hearing officers deliberated and found Mr. Caiola responsible for violations of the Student Code. During the sanctioning phase of the hearing that followed, the hearing officers heard a victim impact statement by the Complainant as well as an impact statement given by Mr. Caiola (in which, among other things, he detailed the impact that expulsion would have on him, including the fact that he had been admitted to and was scheduled to begin a masters program in education the following Fall which was conditioned on his graduation in the Spring of that school year), as well as reviewed Mr. Caiola's transcript. After deliberating, the hearing officers notified Mr. Caiola of their determination that he would be expelled from the university, explained the appeals process and also explained the nature of expulsion.

On March 1, 2012, one of the hearing officers sent the Plaintiff a letter (by email) detailing the decision made at the administrative hearing, explaining the Student Code sections violated by the Plaintiff and the sanction imposed. It also detailed the appeals process. [Dkt. 10-2 Hearing Decision Letter]. Mr. Caiola appealed the decision of the hearing officers to Defendant John Saddlemire, Vice

President for Student Affairs.  His appeal included a written statement prepared by Caiola, four character statements from friends and supervisors of the Plaintiff, and five statements from friends of the Plaintiff who had also provided witness statements, both protesting the investigation process and vouching for his character.[1]  Saddlemire denied the Plaintiff's appeal on March 16, 2012, concluding (after reviewing the documentation and audio recording of the hearing) that "the hearing process and sanction of expulsion are in accordance with our community standards process and consistent with sanctions levied for severe violations of The Student Code."

    The extensive nature of the notice and procedures afforded to Plaintiff pre expulsion, and the availability of an appeals process post-deprivation, deem that the University's hearing procedures comport with due process.  The Plaintiff was afforded notice of the charges against him and the provisions of the Student Code allegedly violated, and was afforded a meaningful opportunity for a hearing.  The risk of erroneous deprivation of a student's interest through the procedures

---

[1] The Court notes that Caiola complained at the appellate level that Cinnamon Adams, the UConn employee who investigated the incident and later acted as the charging party at Caiola's disciplinary hearing, was biased.  He further accused Adams of telling him that he could not submit a written statement to his hearing, even though the hearing officers afforded the Complainant and her witness an opportunity to read from written statements during the hearing.  Caiola's attorney does not argue that Adams' conduct tainted the hearing process.  Even if it had, Caiola's admission that he refused to acquiesce to the Complainant's refusals of his advances to have intercourse is sufficient, together with the time of night that she relented and the circumstances of her acquiescence, to support the hearing officers' conclusions that the Claimant's acquiescence was not freely and voluntarily given.

7

granted is low, as is the probable value of any additional or substitute procedural safeguards.  Therefore, the Plaintiff has failed to meet his burden of proving a likelihood of success on the merits of his claim.  See *Saliture v. Quinnipiac Univ.*, 3:05CV1956(SRU), 2006 WL 1668772, at *3-4 (D. Conn. June 6, 2006) (declining to issue injunction reinstating students who had been expelled for hosting a keg party, as students had not demonstrated reasonable likelihood of success: "Although [the university official] declined to consider the character statements that the plaintiffs submitted and she did not find their other evidence persuasive, her actions hardly constitute a due process violation"); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 637 (6th Cir. 2005) (finding no violation of student's procedural due process rights after medical student was expelled following conviction for felony drug crime where student received notice of accusations against him, was afforded a hearing in which he was not permitted to cross examine the arresting officer but was able to present his version of events after hearing officer's testimony, and where hearing committee did not produce written findings; procedures were "fundamentally fair" even where they "were far from ideal and certainly could have been better"); *Cady v. S. Suburban Coll.*, 152 F. App'x 531, 534 (7th Cir. 2005) (finding no violation of college student's procedural due process rights prior to expulsion for two incidents in which student behaved in a threatening manner, where student received written notice of the charges against him and a pretermination hearing in which he had the opportunity to present his side of the story); *Foo v. Trustees, Indiana Univ.*, 88 F. Supp. 2d 937, 940 (S.D. Ind. 1999) (finding no violation of due process where college student

8

who was on disciplinary probation for possessing alcohol in residence hall and who subsequently threw a food tray against a wall in the cafeteria because he "felt like destroying something," received notice of the charges against him and signed form waiving his right to three day notice period, received a hearing at which he was given a charge letter and police report containing evidence against him and was allowed to tell his version of events, and where student claimed he did not understand hearing to be formal judicial conference at which he was being charged with anything, and where student arguably did not receive notice of right to appeal until after deadline for appealing decision).

The Plaintiff also argues that the evidence presented at the hearing did not constitute substantial evidence to sustain the hearing officer's findings, constituting a deprivation of his due process rights. It is unclear, however, that the "substantial evidence" standard that the Plaintiff encourages this Court to apply is applicable in this Circuit. Several circuits consider whether, in an analysis of due process, substantial evidence exists to support a disciplinary decision in the school context. *See Nash v. Auburn Univ.*, 812 F.2d 655, 668 (11th Cir. 1987) (holding that "there was substantial evidence to support the board's conclusion that appellants were guilty of academic dishonesty," thus meriting their suspensions); *Jackson v. Hayakawa*, 761 F.2d 525, 527 (9th Cir. 1985) (holding that "[n]o disciplinary action could be taken on grounds which were not supported by substantial evidence" where college students were reprimanded, put on probation, and expelled for attending a rally). However, the Second Circuit has not employed or analyzed whether substantial evidence review is proper in a

due process analysis in the school context. Plaintiff points to, and the Court can find, only one district court case within the Second Circuit employing this standard. *See Rubino v. Saddlemire,* 305CV1955 PCD, 2007 WL 685183 (D. Conn. Mar. 1, 2007) ("Although the Second Circuit has not specifically addressed the issue of the sufficiency of the evidence in school disciplinary proceedings, the Court assumes, based on the foregoing authority as well as the Supreme Court's requirement that the hearing be a "meaningful" one, that the University's disciplinary action must be supported by substantial evidence in order to comport with due process."). As the district court specifically recognized, the Second Circuit has not yet adopted the substantial evidence standard in school disciplinary proceedings.

Even if substantial evidence review is applicable in this Circuit, however, the Plaintiff has failed to sustain his burden of proving that the hearing officers lacked sufficient evidence to support their conclusion. A close and detailed review of the entirety of the administrative record discloses that there existed at the time of the hearing, and the hearing officers considered, testimonial and physical evidence both in support of and in opposition to the decision they ultimately reached. The Complainant testified that Caiola pressured her to engage in sexual conduct against her will by refusing to accept her unwillingness to have intercourse and asking her repeatedly to do so late into the night. Caiola testified that the acts were consensual. He acknowledged that on the night of the incident the Complainant refused his request to have intercourse on more than one occasion and that he did not accept her rejection, but rather persisted in

asking her until she consented in the early hours of the morning.  None of the witnesses were present at the time of the event at issue, although Caiola's witnesses saw the Complainant the night of and morning after the incident.  They testified that she was lucid on the night of the incident and did not seem upset the morning after.  The Complainant offered constancy of accusation evidence and evidence of the adverse emotional impact she suffered as a result of the night's events.

The hearing accorded Plaintiff was conducted to determine the application of the University's Student Code.  The "Definitions" section of the Code defines consent as "an understandable exchange of affirmative words or actions, which indicate willingness to participate in sexual activity.  Consent must be informed, freely and actively given.  It is the responsibility of the initiator to obtain clear and affirmative responses at each stage of sexual involvement.  The lack of a negative response is not consent.  Past consent of sexual activity does not imply ongoing future consent."  The hearing officers found that Caiola violated section 2011.4 of the Student Code which proscribes sexual misconduct including unwelcome sexual contact and sexual harassment, and section 2011.5 which proscribes behavior or conduct that threatens or endangers the health or safety of any person. The officers concluded that "[b]ased on the information presented to us at the hearing, including prior conversations about sexual boundaries, circumstances that place the complaint in a vulnerable situation, and the credibility of the complainant supported by documentation of the night's events, we believe you put unreasonable pressure on the complainant which prevented

her from giving informed, free, and active consent for sexual intercourse." Caiola challenges the sufficiency of the evidence defying the credibility of the evidence against him. On the basis of Caiola's admission that he did not accept the Complainant's rejections and his persistence until she relented, substantial evidence existed to support the hearing officers' decision. Thus their decision did not constitute a violation of due process.

Furthermore, the Plaintiff's claim that the Student Code is unconstitutionally vague lacks merit at this stage such that injunctive relief would be appropriate. The Plaintiff argues that the Student Code did not reasonably apprise him that he could be subject to sanctions based on his application of "unreasonable pressure" or "coercion" upon the Complainant to engage in sexual intercourse. However, in the University's February 22, 2012 letter to the Plaintiff, he was apprised that he was being investigated for potential violations of the Code's proscriptions on Sexual Misconduct and Endangering Behavior. As stated above, the Student Code defined Sexual Misconduct as including, "but not limited to, the true threat of or actual sexual assault, unwelcome sexual contact, and/or sexual harassment." [Dkt. 10-1 at p.5 of 18]. Endangering Behavior was defined as "behavior which includes, but is not limited to, conduct that threatens or endangers the health or safety of any person including one's self." [Dkt. 10-1 at p.5 of 18]. The Incident Report included with the February 22 letter contained an incident narrative from the investigator's meeting with the Complainant, which describes a situation in which the Complainant felt that she had not given consent for sexual intercourse and in which the Plaintiff insisted on sexual

12

intercourse despite her protests. It is imminently reasonable to infer based on the materials provided to the Plaintiff in this letter that the conduct for which Mr. Caiola was being investigated was non-consensual sexual behavior. Moreover, the February 22 letter instructed Mr. Caiola to familiarize himself with the Student Code, in which the definition of "consent" appears plainly in Part II. "Consent" is defined and explained as

> an understandable exchange of affirmative words or actions, which indicate a willingness to participate in a mutually agreed upon sexual activity. Consent must be informed, *freely and actively given*. It is the responsibility of the initiator to obtain clear and affirmative responses at each stage of sexual involvement. The lack of a negative response is not consent. An individual who is incapacitated by alcohol and/or other drugs both voluntarily or involuntarily consumed may not give consent. Past consent of sexual activity does not imply ongoing future consent.

[Dkt. 10-1 Student Code, at pp. 2-3 of 18] (emphasis added). This definition plainly contemplates that consent given under unreasonable pressure or coercion would not be freely given and thus would not constitute consent. Merriam Webster Dictionary defines the verb "coerce" in the following manner: "to compel to an act or choice" or "to achieve by force or threat." To "pressure" appears as a synonym. Merriam Webster Dictionary, *available online at* http://www.merriam-webster.com/dictionary. The Student Code, which necessarily does not include definitions for each permutation of a situation in which a student may find him or herself, contemplates that consent not freely given does not constitute consent. That the Plaintiff was not explicitly told that he was alleged to have coerced the Complainant into engaging in sexual activity

13

is of no consequence, as he was notified of the Complainant's allegation of non-consensual sexual activity, which encompasses by its definition sexual activity by coercion or through unreasonable pressure.   The Plaintiff in this case has failed to meet his burden of proving the likelihood of success on the merits based on his vagueness claim.

Lastly, it is unclear whether the Plaintiff is advancing a substantive due process claim.  If he is, the Court finds that he has presented insufficient evidence to meet the burden necessary for the Court to implement the drastic injunctive remedy he seeks.  Substantive due process embodies society's desire to "prevent government from abusing [its] power, or employing it as an instrument of oppression."  *Collins v. Harker Heights,* 503 U.S. 115, 126 (1992).  However, the Supreme Court has "repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  *Id.* at 129.  Government conduct that violates substantive due process is "conduct that shocks the conscience and violates the decencies of civilized conduct."  *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998) (quoting *Rochin v. California,* 342 U.S. 165, 172–173 (1952)).  Conscious-shocking conduct "do[es] more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically" and is "bound to offend even hardened sensibilities." *Rouchin,* 342 U.S. at 172.

The Plaintiff here alleges that "In light of the absence of substantial evidence that Plaintiff had violated the relevant provisions of the Student Code, and in light of the impermissible vagueness of those provisions, as applied to

14

**Plaintiffs alleged conduct, the hearing officers' decision to expel Plaintiff was arbitrary and capricious." [Dkt. 1 Ver. Compl. at ¶26(d)]. To the extent that this allegation may be read to imply a substantive due process violation, nothing in the record presented to the Court speaks to conduct that is shocking to the conscious in a constitutional sense. The procedures afforded to Mr. Caiola were extensive, he was provided with clear notice and ample opportunity to be heard, and the plain language of the University's Student Code is not impermissibly vague. Neither the conduct of the hearing officers nor the decision to expel Caiola was shocking to the conscience.**

**For the foregoing reasons, the Plaintiff's motion for a preliminary injunction is DENIED.**

                                                **IT IS SO ORDERED.**

                                                **_____/s/_____**
                                                **Hon. Vanessa L. Bryant**
                                                **United States District Judge**

**Dated at Hartford, Connecticut: March 27, 2013**